SPB/dmo
07/690

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

IN RE:                                                                  Case No. 08-20895

SMI NEW HOME SOLUTIONS, LLC                          Chapter 11

                Debtor,                                       Jude William S. Howard

_____

MOTION OF THE DEBTOR IN POSSESSION FOR ORDER
AUTHORIZING THE SALE OF ASSETS PURSUANT TO 11 U.S.C. § 363
_____

       The Debtor in Possession, SMI New Home Solutions, LLC (Debtor"), by and through counsel, respectfully requests that this Court enter an order, pursuant to 11 U.S.C. § 105(a), 363(b), (f), (h), and 1103 and 1121 (the "Bankruptcy Code"), and Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure granting authority to sell Debtor's real estate assets free and clear of liens, claims, interests and encumbrances. In support of this Motion, the Debtor states as follows:

### BACKGROUND, JURISDICTION AND VENUE

    1.    Debtor is a single member limited liability company owned and controlled by Mark Wheatley. The Debtor currently owns 32 parcels of real estate as more particularly set forth on Exhibit A (the "Real Estate Assets").

    2.    On May 5, 2008, the Debtor filed a petition for relief under Chapter 11 of Title 11, United States Code. No trustee or examiner has been appointed in this case.

    3.    No Committee of Unsecured Creditors has been appointed herein.

    4.    The Debtor is within its exclusive period within which to file a Plan pursuant

to U.S.C. § 1121(a).

5. The Debtor will file a Plan pursuant to 11 U.S.C. § 1121 ( c ), incorporating the terms hereof. By this Motion, the Debtor seeks entry of an order approving the sale of Debtor's Real Estate Assets upon the terms and conditions set forth herein.

6. This Court jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157 (b) (2) (A), (N) and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## TERMS OF THE PROPOSED SALE

7. The Debtor seeks approval for sale of Real Estate Assets, free and clear of all liens, claims, encumbrances and other interests, same to attach to the Net Proceeds (defined below) of sale in the same validity, priority and to the extent set forth below, as to the property itself.

8. The Debtor proposes that the Real Estate Assets to be sold by absolute auction, without reserve, as set forth in the auction proposal attached hereto as Exhibit B (the "Auction Proposal"). The Real Estate Assets include the "Huntington Real Estate Assets", the "Heritage Bank Real Estate Assets", the "First Financial Real Estate Assets" and the "Hardy Credit Real Estate Assets", as shown on Exhibit A.

9. The Huntington Real Estate Assets and the Hardy Credit Real Estate Assets shall be sold in pools as set forth herein and the remaining Real Estate Assets shall be sold separately . One of the houses in the Hardy Credit pool is subject to a sale contract and is excepted from the auction unless the sale fails to close in the next thirty (30) days. The Debtor proposes that the "Real Estate Sale Expenses" (defined below) shall be paid from the Gross

Sale Proceeds in the following proportions:

|  |  |
|---|---|
| Huntington Real Estate Assets: | 64.5% |
| Heritage Bank Real Estate Assets: | 9.6% |
| First Financial Real Estate Assets: | 9.6% |
| Hardy Credit Real Estate Assets: | <u>16.3%</u> |
|  | 100% |

10. The Banks may credit bid in accordance with U.S.C. § 363 (k); however, they shall pay, in cash, their respective portions of the Real Estate Sale Expenses, the closing Expenses and the Released Proceeds as defined and set forth herein. The Debtor further contends that the sales proposed herein should be exempt from transfer or similar taxes pursuant to 11 U.S.C. § 1146(a).

11. "Real Estate Sale Expenses", as used herein, shall mean the expenses of sale including but not limited to, advertising expenses and auctioneer fees, and other expenses of sale.

12. "Net Proceeds" as used herein, shall mean the sale proceeds of a Real Estate Asset after deduction/payment of the Real Estate Sale Expenses, less expenses incident to the closing of the sale ("Closing Expenses"), including but not limited to ad valorem taxes, recording fees, and all other usual and customary expenses necessary to transfer title to a Real Estate Asset. At Closing, the Debtor proposes that the Net Proceeds of the Real Estate Asset shall be paid as follows:

    a. <u>Huntington Real Estate Assets:</u> Huntington National Bank shall receive the amount of its Allowed Secured Claim and shall release any additional Net

Proceeds to the Estate (the "Huntington Released Proceeds").

    b. <u>Heritage Real Estate Assets:</u> Heritage Bank shall receive the amount of its Allowed Secured Claim and shall release any additional Net Proceeds to the Estate (the "Heritage Bank Released Proceeds").

    c. <u>Hardy Credit Real Estate Asets:</u> Hardy Credit shall receive the amount of its Allowed Secured Claim and shall release any additional Net Proceeds to the Estate (the Hardy Credit Released Proceeds").

    d. <u>First Financial Real Estate Assets:</u> First Financial shall receive the amount of its Allowed Secured Claim and shall release any additional Net Proceeds to the Estate (the "First Financial Released Proceeds").

    e. The Huntington Released Proceeds, the Heritage Bank Released Proceeds, the Hardy Credit Released Proceeds, the First Financial Released Proceeds (collectively, the "Released Proceeds") shall be distributed as follows:

  (i) Fifty (50%) percent to be escrowed for payment, pro rata, to valid Mechanics Liens Secured Claims (the "Mechanics Lien Proceeds") for distribution pursuant to a confirmed Plan herein.
  (ii) Fifty (50%) percent to the Liquidation Account for distribution pursuant to a confirmed Plan herein.

In addition, any rebate of Buyer's Premium shall be deposited into the Liquidation Account.

 13. Pursuant to the Auction Proposal, the closing of the Sales (the "Closing") will take place within thirty (30) days after entry of an order approving this Motion (the "Sale Order") <u>and</u> the conduct of the Auction or at such other date and time to which the parties may mutually agree.

 14. The Debtor will further seek approval for the retention of Tranzon Asset

Advisors ("Auctioneer") upon the terms and conditions set forth in Exhibit B hereto. The Debtor has selected Auctioneer due to the considerable experience in matters of this character. The Debtor believes the Auctioneer is well-qualified to conduct the sales described herein.

## RELIEF REQUESTED
## NECESSITY OF THE SALE

15. Since the filing of this chapter 11 case, the Debtor has met with the Secured Creditors regarding its intent to sell its real estate assets by private sale. The Debtor has determined that an absolute auction of the Real Estate Assets is in the best interests of the within Estate and its creditors. In furtherance of its duties, the Debtor has determined that an absolute auction will maximize the benefits of the within Estate. The Debtor has or will file a Plan incorporating the terms hereof.

16. A sale of the Real Estate Assets and prompt payment of the secured claims as set forth herein will cease the accrual of interest and other charges and ensure that proceeds are available for the payment of other claims herein, including administrative claims. A sale pursuant to section 363 of the Bankruptcy Code, in conjunction with a Chapter 11 Plan of Liquidation and the terms hereof are in the best interest of the Debtor, its creditors and its bankruptcy estate.

17. As set forth herein, the timing of the sale is critical and accordingly, the Debtor further requests that the Court waive the ten (10) day stay of an order approving the Sale which would otherwise be required by Bankruptcy Rule 6004(g).

## PURCHASERS ARE GOOD FAITH PURCHASERS

18. The Debtor requests that the Sale Order provide that the successful bidders

have acquired the Real Estate Assets in good faith. Good faith is present here where the Real Estate Assets will be exposed to the general public, after arms-length, commercial advertising customary in the industry. The proposed auction procedures will ensure that the highest and best bid will be obtained. No "special treatment" will be afforded any bidder. Therefore, an order that the successful bidder has acted in good faith within the meaning of section 363(m) of the Bankruptcy Code is appropriate[1].

## THE SALE FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS IS APPROPRIATE

19. The Debtor also requests that the Sale Order provide that the sales of Real Estate Assets are free and clear of any lien, claim, interest and encumbrance in any of the assets to be sold held by any third party, including, but not limited to claims set-off and/or recoupment. Thus, the sale of the Assets is appropriately free and clear of all liens, claims, interests, rights of setoff, recoupment or encumbrances pursuant to section 363(f) of the Bankruptcy Code as set forth below, and all asserted claims, liens, rights, interests and encumbrances of any entity in and to the Real Estate Assets will attach to the sales proceeds in the same validity, priority and extent as exist under applicable law pursuant to section 363 (e) of the Bankruptcy Code.

20. Upon the Closings contemplated by the auction procedures, the successful bidder(s) will take title to and possession of Real Estate Assets, except as otherwise provided herein, or the Sale Order, free and clear of: (a) any mortgages, security interests, liens or

---

[1] The Sixth Circuit has indicated that a party would have to show fraud or collusion between the Buyer, the other bidders and the Debtors in order to demonstrate a lack of good faith. Tichard v. Swinebroad and Denton Auctioneers, 770 F. 2d 167 (6th Cir. 1985)(unpublished table opinion, cert. den. 475 U.S. 1026 (1986). See also LaSalle National Bank Association v. MiddlebeltPlymouth Venture, L.L.C., 221 F. Supp. 792 (E.D. Mich.2002). The Debtor submits that auction procedures and any or ant purchase contract entered into as a result of the auction procedures will be an arm's length, negotiated transaction and thus entitled to the protections of section 363 (m) of the Bankruptcy Code.

encumbrances of any kind, including any administrative expenses, priority claims asserted herein, claims of set-off and/or recoupment and any ownership claims for any arrangement which is intended as a financing (and not a true lease); (b) any demands or claims of creditors against the Debtor; and ( c ) any person claiming through, by or on behalf of the Debtor, whether such claim, demand, lien or interest be direct or indirect, known or unknown, or claiming that the bidder is a successor-in-interest or pursuant to any other theory.

21. As part of this Motion, the Debtor seeks an Order granting possession at the time of closing of the Real Estate Assets to the purchaser.

## AUTHORITY

22. Entry of the Sale Order approving the final sale of the Real Estate Assets at the conclusion of the Auction is authorized and appropriate under the Bankruptcy Code section 363 (b) of the Bankruptcy Code provides "the trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate". Section 1107 (a) of the Bankruptcy Code grants that a debtor-in-possession the powers of a trustee in respect to various matters including sales under section 362 (b) of the Bankruptcy Code.

23. The Court's power to authorize a sale under section 363 (b) of the Bankruptcy Code is to be exercised at its discretion, utilizing a flexible, case by case approach. In re Baldwin United Corp., 43 B. R. 905 (Bkrtcy. S.D. Ohio 1984). The key consideration is the Court's finding that a good business reason exits for the sale. Stephens Industires, Inc. v. McCluung, 789 F.2d 386 (6th Cir., 1986).

> [T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business....Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in Lionel, the bankruptcy judge should consider all

7

Case 08-20895-tnw   Doc 35   Filed 06/03/08   Entered 06/03/08 17:34:53   Desc Main
Document      Page 8 of 13

salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the assets of the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of property, which of the alternatives if use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to to provide guidance to the bankruptcy judge.

Stephens Industries, Inc. vs. McClung, 789 F.2d 386 (6th Cir. 1986).

24. Several sound business reasons exist for selling the Real Estate Assets. First, the maximum value for Real Estate Assets will be obtained by selling them at an absolute auction pursuant to the Auction Proposal. Second, as detailed above, the Debtor has taken steps to liquidate same, but does not appear to be able to satisfy all of its obligations on an ongoing basis. Given the Debtor's current situation, the Debtor does not have a source of sufficient capital necessary to continue operations in the hope that it can attain profitability. The failure to timely liquidate the Real Estate Assets will result in continued diminution of the value of the assets of the within Estate.

25. The proposed auction procedure is geared toward obtaining the highest and best price for the Real Estate Assets. The procedures for sale of the Real Estate Assets as set forth herein provide potential bidders an opportunity to perform due diligence for the Real Estate Assets, thus ensuring that the sale of the Real Estate Assets will be effected through an arms-length transaction. Accordingly, the proposed auction procedure will allow the highest and best bidder to purchase the Real Estate Assets, thereby maximizing the return to the Debtor's estate.

26. An auction is sufficient to establish that one has paid "value" for assets of a bankruptcy estate, where the auction sale has itself been conducted on good faith. In re Abbots Dairies of Pennsylvania, Inc., 788 F.2d 143 (3rd Cir. 1986). The Debtor believes the auction is an appropriate vehicle to achieve the fair market value of the Real Estate Assets.

27. Section 363 (f) of the Bankruptcy Code authorizes the sale of property under section 363 (b) of section 363 ( c) of the Bankruptcy Code to be free and clear of interests in such property held by an entity if:

(a) Applicable non-bankruptcy law permits sale of such property free and clear of such interests;

(b) Such entity consents;

(c) Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d) Such interest is in bonafide dispute; or

(e) Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363 (f). A debtor need only satisfy one of the requirements set forth in section 363 (f) to justify approval of a sale free and clear of liens and interests. Michigan Employment Security Commission v. Wolverine Radio Co., 930 F.2d 1132, at 1147, n.24 (6th Cir. 1991). The Debtor believes that the sale satisfies one or more of these conditions for each party with an interest in the Real Estate Assets.

28. The Debtor is aware of a purported valid or binding listing contract related to the Real Estate Assets. However, if such contract does exist, it will be rejected. Section 365 (a) of the Bankruptcy Code provides as follows:

Except as provided in section 765 and 766 of this title and in subsections

(b), ( c ) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365 (a).

29. The Bankruptcy Code provides little guidance as to the standards to be applied by the Court in approving an assumption or rejection. The appropriate test has been described as a combination of a benefit to the bankruptcy estate and exercise of "reasonable business judgment". In re The Beare Co., 177 B.R. 879, at 881 (Bkrtcy. W.D. Tenn. 1994). The business judgment test is the same test applied to judicial review of corporate decisions outside bankruptcy. Johnson v. Fairco Corp., 61 B.R. 317 (N.D. Ill. 1986). This test analyzes the impact that continued performance under the executory contract or unexpired lease will have on the estate. Assumption or rejection of the contract or lease will be approved upon a mere showing that the action will benefit the estate. In re: Chestnut Ridge Plaza Associates, L.P., 156 B.R. 477 (Bkrtcy. W.D. Pa. 1993) (test is the best interests of the estate); Bezanson v. Metropolitan Ins. & Annuity Co., 952 F.2d 1 (1st Cir. 1991). A chapter 11 debtor is afforded great latitude in assuming or rejecting executory contracts in the exercise of its sound business judgment. In re: Monarch Tool & Mfg. Co., 114 B.R. 134, 137 (Bkrtcy. S.D. Ohio 1990).

30. As set forth above, the Plan filed or to be filed by the Debtor will reject the Listing Contracts. Thus, if there are any Listing Contracts still in effect, they should not have an effect on the sales proposed herein and the sales should be free and clear of any Listing Contracts which should be deemed null and void.

**Conclusion**

Wherefore, the Debtor respectfully requests that this Court enter a Sale Order in concordance with the relief requested in this Motion, granting the relief requested herein and any such other and further relief as this Court deems just and appropriate under the circumstances.

**NOTICE**

Notice is hereby given that the foregoing shall be brought on for hearing before the United States Bankruptcy Court for the Eastern District of Kentucky, 35 West 5th Street, Room 306, Covington, Kentucky, on June 10, 2008, at the hour of 2:00 pm, or as soon thereafter as counsel may be heard.

Respectfully submitted,

/s/ Stuart P. Brown, Esq.
STUART P. BROWN (KY 87016)
O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT
25 Crestview Hills Mall Road, Suite 201
P. O. Box 17411
Covington, KY 41017-0411
Tel: (859) 331-2000
Fax: (859) 578.3365
email: sbrown@ortlaw.com
ATTORNEYS FOR THE DEBTOR

**CERTIFICATE OF SERVICE**

In addition to the parties served via the Court's ECF system, the undersigned certifies

that a true and accurate copy of the foregoing was served via United States First Class Mail on June 3, 2008, on the parties listed below and on the parties on the attached service list.

Chuck Korzenborn
Kenton County Sheriff
303 Court Street
PO Box 792
Covington, KY 41011

Daugherty Realtors, Inc.
5 N. Main Street
Walton, KY 41094

/s/ Stuart P. Brown